NITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>HABERSHAM DEVELOPMENTS, LLC,<br><br>Debtor | CHAPTER 7<br><br>CASE NO. 09-20039-REB<br><br>HONORABLE ROBERT E. BRIZENDINE |

**CHAPTER 7 TRUSTEE'S SECOND MOTION FOR AUTHORITY TO SELL REAL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS and MOTION TO DISBURSE FUNDS AT CLOSING**

The Chapter 7 Trustee, Albert F. Nasuti, (the "Trustee"), respectfully moves this Honorable Court, pursuant to 11 U.S.C. §363(b)(1) for an Order authorizing Trustee to sell estate's interest in real property located at Land Lot 114 of the 10th District of Habersham County (Tracts 1C1, 1C2, 1C3, and 1C4 or collectively referenced to as Tract 1C), Georgia at a private sale to E-Wong Ventures, LLC for $4,000.00, with any liens to attach to the net proceeds of the sale. In support of this Motion, the Trustee states:

1. The Debtor, Habersham Developments, LLC, filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code on January 5, 2009. The case was subsequently converted to Chapter 7 on July 15, 2009, at which time Albert F. Nasuti was appointed Chapter 7 Trustee.

2. The property to be sold is an unimproved land located on Land Lot 114 of the 10th District of Habersham County, Georgia, and consists of Tracts 1C1, 1C2, 1C3, and 1C4 for a total of 2.11 acres, more or less, as shown on Plat of Survey dated September 22, 2008 and revised on December 30, 2008 attached as Exhibit "A", or collectively the same Tracts 1C1, 1C2, 1C3, and 1C4 are referenced to as Tract 1C (2.11 acres) on Plat of Survey dated September 22, 2008 attached as Exhibit "B" (hereinafter, the "Property"). The Property represents property of this bankruptcy estate with equity available for distribution to the allowed claims of the Debtor's creditors.

3. The buyer, E-Wong Ventures, LLC (the "Buyer"), has offered to purchase this Property for $4,000.00 (four thousand dollars) on the terms as set forth in the Purchase and Sale

   Agreement dated March 27, 2013 (attached as <u>Exhibit "C"</u>). The property will be sold "as is – where is" with no warranties or representations of any kind. In accordance with paragraph 1(J) of the Purchase and Sale Agreement, the Trustee is currently holding a $250.00 (two hundred and fifty dollars) earnest money deposit.

4. On information and belief, after diligent inquiry and negotiation, the Trustee believes and therefore asserts that $4,000.00 represents the best price that can be obtained for this Property.

5. On March 28, 2013 this Court entered an Order Granting Trustee's Application to Employ Sun Realty Group, LLC as Broker to assist him in the sale of this Property. Subject to final approval by the Bankruptcy Court, the Broker will be paid a flat fee commission of $1,000.00 for the sale of this Property. The Trustee proposes to pay the Broker its commission at closing.

6. The Trustee also proposes to pay pro-rated unpaid real estate taxes due as of the date of closing, Georgia Property Transfer taxes, and any other fees or expenses mandated or required by law or by the subject sales contract to transfer title and/or ownership, all to be paid at closing.

7. The Trustee will hold the remaining proceeds of the sale in the estate account.

   **WHEREFORE**, the Trustee respectfully asks this Court to enter an Order authorizing the Trustee to Sell Real Property of the Estate Free and Clear of Liens, Claims, Encumbrances, and other interests, to wit, the estate's interest in Land Lot 114 of the 10th District of Habersham County (Tracts 1C1, 1C2, 1C3, and 1C4 or collectively referenced to as Tract 1C), Georgia at a private sale to E-Wong Ventures, LLC for $4,000.00, with distributions to be made at closing as set forth above and with any liens to attach to the net proceeds of the sale, on the foregoing terms, and granting such other and further relief as the Court deems appropriate.

   Respectfully submitted this 1st day of April, 2013.

                   /s/  *Albert Nasuti*
                   _____
                   Albert F. Nasuti, Esq.
                   Georgia Bar No. 535209
                   Thompson, O'Brien, Kemp & Nasuti, P.C.
                   40 Technology Parkway South, Suite 300
                   Norcross, Georgia  30092
                   Tel: (770) 925-0111
                   Counsel for Chapter 7 Trustee

**EXHIBIT A**









# COMMERCIAL PURCHASE AND SALE AGREEMENT

Offer Date: **March 27, 2013**

2013 Printing

**1. Purchase and Sale.** The buyer(s) listed below ("Buyer") agree to buy and the seller(s) listed below ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.

| A. Name of Buyer(s):<br>Chee Man Wong, E-Wong Ventures, LLC | B. Name of Seller(s):<br>Albert F., Nasuti, Chapter 7 Trustee |
|---|---|

C. **Property Description:** MLS Number: _____  Tax I.D. Number: __083-048__
Address: __Chase Rd. Tracts 1C1, 1C2, 1C3 & 1C4__
City __Cornelia_____, County __Habersham_____, Georgia, Zip Code __30531__
The full legal description of Property is:
   ☐ 1. attached as an exhibit hereto; OR
   ☒ 2. identical to the legal description for the property contained in the deed recorded in Deed Book __866__, Page __255-256__,
   et. seq., __Habersham_____ County, Georgia records;

| D. Purchase Price of Property to be Paid by Buyer:<br>$ Four Thousand Dollars ($4,000.00) | E. Seller's Monetary Contribution at Closing:<br>$ 0.00 |
|---|---|
| F. Closing Date:<br>Within 15 days after Bankruptcy Court Approval | G. Closing Law Firm:<br>Thompson, O'brien, Kemp & Nasuti, P.C. |
| H. Holder of Earnest Money ("Holder"):<br>Albert F. Nasuti, Chapter 7 Trustee | I. Seller Retains Possession of Property Through:<br>Closing |

J. **Earnest Money:** Earnest Money shall be paid by check ☒  cash ☐  wire transfer of immediately available funds ☐ as follows:
   ☒ 1. $ __250.00_____ as of the Offer Date.
   ☐ 2. $ _____ within ____ days from the Binding Agreement Date.
   ☐ 3. _____

K. Property is being sold subject to a Due Diligence Period of __30__ days from the Binding Agreement Date.
L. Buyer shall have __30__ days from the Binding Agreement Date in which to furnish written title objections to Seller.
M. Seller shall deliver Due Diligence Materials to Buyer within __N/A__ days from Binding Agreement Date.
N. Buyer may ☒ OR may not ☐ assign this Agreement in accordance with the terms of this Agreement.
O. Disputes regarding earnest money shall be resolved by a reasonable interpretation by Holder ☒; OR arbitration ☐.
P. Time Limit of Offer: The Offer set forth herein expires at _____ o'clock ____.m. on the date _____.

**2. Brokerage Relationships in this Transaction.**

| A. Listing Broker is __SUN REALTY GROUP LLC__ and is: | B. Selling Broker is __SUN REALTY GROUP LLC__ and is: |
|---|---|
| 1. ☒ representing Seller as a client. | 1. ☐ representing Buyer as a client. |
| 2. ☐ not representing Seller (Seller is a customer). | 2. ☒ not representing Buyer (Buyer is a customer). |
| 3. ☐ acting as a dual agent representing both Buyer and Seller. | 3. ☐ acting as a dual agent representing both Buyer and Seller. |
| 4. ☐ acting as a designated agent where _____ has been assigned to exclusively represent Seller. | 4. ☐ acting as a designated agent where _____ has been assigned to exclusively represent Buyer. |

C. Material Relationship Disclosure: Broker and/or their affiliated licensees disclose the following material relationships:
   N/A

Buyer(s) Initials __CP__ /_____  Seller(s) Initials __AFN__ /_____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH __Michael Felton__ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.        CF2, Commercial Purchase and Sale Agreement, Page 1 of 7, 01/01/13

3. **Purchase Price and Method of Payment.** The Purchase Price shall be paid in U.S. Dollars at closing in cash or its equivalent which shall only include the wire transfer of immediately available funds, or a cashier's check issued for the closing by a federally insured bank, savings bank, savings and loan association or credit union where the funds are immediately available.

4. **Due Diligence.** ~~Buyer has paid Seller the sum of $25, the receipt of which is hereby acknowledged by Seller, as option money for Buyer having the right to terminate this agreement during the Due Diligence Period. Prior to closing,~~ Buyer and Buyer's agents shall have the right to enter upon Property at Buyer's expense, and at reasonable times, to inspect, survey, examine, and test Property as Buyer may deem necessary as part of Buyer's acquisition of Property. Buyer shall indemnify and hold Seller and all Brokers harmless from and against any and all claims, injuries, and damages to persons and/or property arising out of or related to the exercise of Buyer's rights hereunder. During the Due Diligence Period Buyer may evaluate Property, the feasibility of the transaction, the availability and cost of financing, and any other matter of concern to Buyer. During the Due Diligence Period, Buyer shall have the right to terminate this Agreement upon notice to Seller if Buyer determines, based on an evaluation of the above, that it is not desirable to proceed with the transaction. In such event, Holder shall promptly refund Buyer's earnest money in accordance with the earnest money paragraph below.

*GAM* (initials)

5. **Earnest Money.**
   A. **Receipt:** In the event Buyer terminates this Agreement during the Due Diligence Period or does not otherwise close this transaction, Buyer shall promptly return all Due Diligence materials to Seller. The earnest money shall be deposited in Holder's escrow/trust account (with Holder retaining the interest if the account is interest bearing) within five (5) banking days from the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not be required to return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored for any reason by the bank upon which it is drawn, Holder shall promptly give notice to Buyer and Seller. Buyer shall have 3 banking days after notice to deliver good funds to Holder. In the event Buyer does not timely deliver good funds, Seller shall have the right to terminate this Agreement upon written notice to Buyer.
   B. **Entitlement to Earnest Money:** Subject to the Disbursement of earnest money paragraph below:
      1. Buyer shall be entitled to the earnest money upon: (a) failure of the parties to enter into a binding agreement; (b) failure of any contingency or condition to which this Agreement is subject; (c) termination of this Agreement due to the default of Seller; (d) the termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement; or (e) upon the closing of Property.
      2. Seller shall be entitled to the earnest money if this Agreement is terminated due to the default of Buyer. In such event, Holder may pay the earnest money to Seller by check, which if accepted and deposited by Seller, shall constitute liquidated damages in full settlement of all claims of Seller. It is agreed to by the parties that such liquidated damages are not a penalty and are a good faith estimate of Seller's actual damages, which damages are difficult to ascertain.
   C. **Disbursement of Earnest Money:** Holder shall disburse Earnest Money only as follows: (a) at Closing; (b) upon a subsequent written agreement signed by Buyer and Seller; (c) as set forth below in the event of a dispute regarding earnest money; or (d) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). No party shall seek damages from Holder, nor shall Holder be liable for any such damages, for any matter arising out of or related to the performance of Holder's duties hereunder.
   D. **Disputes Regarding Earnest Money:** In the event Buyer or Seller notifies Holder of a dispute regarding the disposition of Earnest Money that Holder cannot resolve, Holder shall settle the dispute in accordance with method selected on the cover page of this Agreement.
      1. **Reasonable Interpretation by Holder.** In the event earnest money disputes are to be resolved by Holder herein, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties 10 days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the fifteen (15) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. If there is a dispute over the earnest money which the parties cannot resolve after a reasonable period of time, and where Holder has a bona fide question as to who is entitled to the earnest money, Broker may interplead the earnest money into a court of competent jurisdiction. Holder shall be reimbursed for and may deduct from any funds interpleaded, its costs and expenses, including reasonable attorney's fees actually incurred. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees and court costs and the amount deducted by Holder from the non-prevailing defendant.
      2. **Arbitration.** In the event arbitration is selected as the method to resolve earnest money disputes, such disputes shall be resolved by arbitration in accordance with the Federal Arbitration Act 9 U.S.C. § 1 et. seq. and the rules and procedures of the arbitration company selected to administer the arbitration. Upon making or receiving a demand for arbitration, the parties shall work together in good faith to select a mutually acceptable arbitration company with offices in Georgia to administer and conduct the arbitration. If the parties cannot mutually agree on an arbitration company, the company shall be selected as follows. Each party shall simultaneously exchange with the other party a list of three arbitration companies with offices in Georgia acceptable to that party to administer and conduct the arbitration. If there is only one (1) arbitration company that is common to both lists, that company shall administer and conduct the arbitration. If there is more than one arbitration company that is common to both lists, the parties shall either mutually agree on which arbitration company shall be selected or flip a coin to select the arbitration company. If there is not initially a common arbitration company on the lists, the parties shall repeat the process by expanding their lists by two each time until there is a common name on the lists selected by the parties. The decision of the arbitrator shall be final and the arbitrator shall have authority to award attorneys' fees and allocate the costs of arbitration as part of any final award.

*(section crossed out with X)*  *AM* (initials)

---

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH **Michael Felton** IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.    CF2, Commercial Purchase and Sale Agreement, Page 2 of 7, 01/01/13

6. **Seller's Obligations at Closing:** At Closing, Seller shall deliver to Buyer: (a) a Closing Statement; (b) Limited Warranty Deed; (c) FIRPTA Affidavit (indicating that Seller is not a "foreign person" or "foreign corporation" as that term is defined in Section 1445(f)(3) of the Internal Revenue Code of 1986); (d) an Affidavit of Seller's Residence Regarding Georgia Withholding Tax, establishing that Seller is exempt from the requirements of O.C.G.A. § 48-7-128, the Georgia Withholding Statute (or Affidavit of Exemption or Affidavit of Seller's Gain, if withholding is required); (e) a transfer tax declaration form properly signed and executed by Seller; and, (f) all documents which Seller must execute under the terms of this Agreement to cause the Title Company to deliver to Buyer the Title Policy, including, without limitation, a title affidavit from Seller to Buyer and to the Title Company in the form customarily used in Georgia commercial real estate transactions so as to enable the Title Company to issue Buyer the Title Policy with all standard exceptions deleted and subject only to the Permitted Exceptions and evidence reasonably satisfactory to Title Company of its due and proper authority and power to perform its obligations hereunder. In addition, Seller shall deliver to Buyer at Closing all documents/items indicated in Exhibit "C", if any. (All documents to be delivered by Seller under this paragraph, including all documents/items indicated in Exhibit "C" are collectively "Seller's Closing Documents".)

7. **Conditions to Closing.**
   A. **Conditions in Favor of Buyer:** The obligation of Buyer to consummate the transaction contemplated herein is conditioned upon the following conditions precedent as of the Closing Date:
      1. All representations and warranties of Seller made herein shall remain true and correct;
      2. Seller shall have performed all of the covenants undertaken by Seller in this Agreement to be performed by Seller at or prior to Closing;
      3. Seller shall have delivered to the Buyer properly executed originals of Seller's Closing Documents;
      4. ~~There shall have been no material adverse change in the physical condition of Property, except as otherwise provided for in this Agreement; and~~
      5. ~~The issuance at Closing of the Title Policy (or marked binder), with all standard exceptions deleted and subject only to the Permitted Exceptions.~~

   B. **Conditions in Favor of Seller:** The obligation of Seller to consummate the transaction contemplated herein is conditioned upon the following conditions precedent as of the Closing Date:
      1. All representations and warranties of Buyer made herein shall remain true and correct;
      2. Buyer shall have performed all of the covenants undertaken by Buyer in this Agreement to be performed by Buyer at or prior to Closing; and
      3. Buyer shall have: (a) delivered to the Seller properly executed originals of the transfer tax declaration form, title policy documents, closing statement, and any other documents identified in Exhibit "C" that require Buyer's signature; and (b) paid the Purchase Price, plus or minus prorations and adjustments, to Seller.

8. **Costs.**
   A. **Seller's Costs:** Seller shall pay the cost of recording any title curative document, including, without limitation, satisfactions of deeds to secure debt, quitclaim deeds and financing statement terminations; all transfer taxes; all deed recording fees and the fees of Seller's counsel.
   B. **Buyer's Costs:** Buyer shall pay the cost of Buyer's counsel and consultants; any costs in connection with Buyer's inspection of Property and any costs associated with obtaining financing for the acquisition of Property (including any intangibles tax, all deed recording fees and the cost of recording Buyer's loan documents); and the cost of any title examination, survey of the Property obtained by Buyer and any owner's or lender's title insurance.

9. **Taxes and Prorations.** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing; rents, tenant improvements costs and leasing commissions on Property for the calendar year in which the Closing takes place shall be prorated as of 12:01 a.m. on the Closing Date. In the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal shall be deemed assigned to Buyer at closing.

10. **Title.**
    A. **Warranties of Seller.** Seller warrants that at Closing, Seller shall convey good and marketable, fee simple title to Property to Buyer, subject only to the following exemptions:
       1. Liens for ad valorem taxes not yet due and payable;
       2. Those exceptions to which Buyer does not object or which Buyer waives in accordance with the Title Objections paragraph below.
       3. Those Permitted Exceptions attached hereto and incorporated herein as an exhibit to which Buyer has agreed not to object. For all purposes under this Agreement, "Good and marketable, fee simple title" with respect to Property shall be such title: (a) as is classified as "marketable" under the Title Standards of the State Bar of Georgia; and (b) as is acceptable to and insurable by a title insurance company doing business in Georgia ("Title Company"), at standard rates on an American Land Title Association Owner's Policy ("Title Policy").

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH __Michael Felton__ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.     CF2, Commercial Purchase and Sale Agreement, Page 3 of 7, 01/01/13

B. **Title Objections.** Seller shall have until the Closing to cure all valid title objections ("Title Cure Period"). Seller shall satisfy any existing liens or monetary encumbrances identified by Buyer as title objections which may be satisfied by the payment of a sum certain prior to or at Closing. Except for Seller's obligations in the preceding sentence, if Seller fails to cure any other valid title objections of Buyer within the Title Cure Period (and fails to provide Buyer with evidence of Seller's cure satisfactory to Buyer and to the Title Company), Buyer may, as Buyer's sole remedies: (1) rescind the transaction contemplated hereby, in which case, Buyer shall be entitled to the return of Buyer's earnest money; (2) waive any such objections and elect to close the transaction contemplated hereby irrespective of such title objections and without reduction of the Purchase Price; or (3) extend the Closing Date for a period of time not to exceed fifteen (15) days to allow Seller further time to cure such valid title objections. Failure to act in a timely manner under this paragraph shall constitute a waiver of Buyer's rights hereunder. Buyer shall have the right to re-examine title prior to Closing and notify Seller at Closing of any title objections which appear of record after the date of Buyer's initial title examination and before Closing.

11. **Destruction of Property Prior to Closing.** If the Property is destroyed or substantially destroyed prior to Closing, Seller shall give Buyer prompt notice thereof, which notice shall include Seller's reasonable estimate of: ~~(1) the cost to restore and repair the damage;~~ (2) the amount of insurance proceeds, if any, available for the same; and (3) whether the damage will be repaired prior to Closing. Upon notice to Seller, Buyer may terminate this Agreement within 7 days of receiving such notice from Seller. If Buyer does not terminate this Agreement, Buyer shall be deemed to have accepted Property with the damage and shall receive at Closing: (1) any insurance proceeds which have been paid to Seller but not yet spent to repair the damage; and (2) an assignment of all unpaid insurance proceeds on the claim.

12. **Representations and Warranties.**
    A. **Seller's Representations and Warranties:** As of the Binding Agreement Date and the Closing Date, Seller makes the representations and warranties to Buyer, if any, as indicated in Exhibit "D", if attached.
    B. **Buyer's Representations and Warranties:** As of the Binding Agreement Date and the Closing Date, Buyer represents and warrants to Seller that Buyer has the right, power and authority to enter into this Agreement and to consummate the transaction contemplated by the terms and conditions of this Agreement; and the persons executing this Agreement on behalf of Buyer have been duly and validly authorized by Buyer to execute and deliver this Agreement and shall have the right, power and authority to enter into this Agreement and bind Buyer.

13. **Brokerage.** Seller has agreed to pay Listing Broker(s) a real estate commission pursuant to that certain brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). Pursuant to the terms of the Listing Agreement, the Listing Broker has agreed to share that commission with the Selling Broker.

    The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective commissions out of the proceeds of the sale. ~~If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing.~~ If more than one Broker is involved in the transaction, the closing attorney is directed to pay each Broker its respective portion of said commission. ~~The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the Seller of the obligation to pay the remainder thereof after the closing unless the Broker(s) have expressly and in writing agreed to accept the lesser amount in full satisfaction of the Broker(s) claim to a commission.~~



14. **Disclaimer.** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to advise Buyer and Seller on any matter relating to the Property which could have been revealed through a survey, title search, Official Georgia Wood Infestation Report, inspection by a professional home inspector or construction expert, utility bill review, an appraisal, inspection by an environmental engineering inspector, consulting governmental officials or a review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax planner. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement.

15. **Assignment.** If Buyer does not have the right to assign this Agreement, then Buyer cannot assign this Agreement without the prior written permission of Seller. Any such approved assignment shall not release the original Buyer from any liabilities or obligations herein. Notice of such assignment shall be delivered to the Seller within 2 working days of execution, but not less than 5 days from closing. If Buyer has the right to assign this Agreement, then this Agreement may be assigned by the Buyer to any legal entity of which the Buyer or a principal or principals of Buyer own at least a 25% interest.

16. **Notices.**
    A. **All Notices Must Be In Writing.** All notices, including but not limited to offers, counteroffers, acceptances, amendments, demands, notices of termination and other notices, required or permitted hereunder shall be in writing, signed by the party giving the notice. It is the intent of the parties that the requirements of this Notice paragraph shall apply even prior to this Agreement becoming binding.
    B. **Method of Delivery of Notice.** Subject to limitations and conditions set forth herein, notices may only be delivered: (1) in person; (2) by an overnight delivery service, prepaid; (3) by facsimile transmission (FAX); (4) by registered or certified U.S. mail, prepaid, return receipt requested; or (5) by e-mail.
    C. **When Notice Is Received.** Except as may be provided herein, a notice shall not be deemed to be given, delivered or received until it is actually received by the party to whom the notice was intended or that person's authorized agent. Notwithstanding the above, a notice sent by FAX shall be deemed to be received by the party to whom it was sent as of the date and time it is transmitted to either the party or the party's authorized agent provided that the sending FAX produces a written confirmation showing the correct date and the time of the transmission and the telephone number referenced herein to which the notice should have been sent. Additionally, if the sender of a notice by e-mail receives an automatic reply indicating that the e-mail has been opened ("Read Receipt"), the e-mail notice shall be deemed received at that time.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH __Michael Felton__ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.    CF2, Commercial Purchase and Sale Agreement, Page 4 of 7, 01/01/13

D. **Notices Sent to Broker:** Except in transactions where the Broker is practicing designated agency, notice to the Broker, the Broker's employees or the affiliated licensee of Broker representing a party in the transaction shall for all purposes herein be deemed to be notice to that party and such persons shall be authorized agents of the party for the purpose of receiving notice. In any transaction where the Broker is practicing designated agency, only notice to the affiliated licensee designated by Broker to represent the party in the transaction shall be notice to that party. Personal delivery of notice may only be delivered to the party intended to receive the same or that party's authorized agent. Notice to a Broker or the affiliated licensee of Broker who is working with, but not representing a party, shall not be deemed to be notice to that party.

E. **Notice by Fax or E-Mail to a Broker or Affiliated Licensee of a Broker:** Notices by fax or e-mail to a Broker or the affiliated licensee of a Broker may only be sent to the e-mail address or fax number, if any, of the Broker or the affiliated licensee of the Broker set forth on the signature page of this Agreement or subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures set forth herein. If no fax number or e-mail address is included on the signature page of this Agreement (or is subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures) then notice by the means of communication not provided shall not be valid for any purpose herein.

F. **Address, E-Mail or Number for Receiving Notices:** Notices to a signatory to this Agreement shall only be effective if sent to the FAX number, e-mail address and/or physical address of the signatory listed on the signature page of this Agreement or subsequently provided by the signatory to the other signatories hereto in accordance with the notice provisions herein.

17. **Default.**
   A. ~~Rights of One Party Against Another Party: A party defaulting under this Agreement shall be liable for the default. The non-defaulting party may pursue any lawful remedy against the defaulting party.~~
   B. **Rights of Broker Against Defaulting Party:** ~~In the event a party defaults under this Agreement, the defaulting party shall pay as liquidated damages to every broker involved in this transaction with whom the defaulting party does not have a brokerage engagement agreement an amount equal to the share of the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, the written offer(s) of compensation to such broker and/or other written agreements establishing such broker's commission are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty.~~ In the event a Broker referenced herein either has a brokerage engagement agreement or other written agreement for the payment of a real estate commission with a defaulting party, the Broker shall only have such remedies against the defaulting party as are provided for in such agreement. *(initialed) MF*

18. **Other Provisions.**
   A. **Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.
   B. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.
   C. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. This Agreement may not be assigned by Buyer except with the written agreement of Seller. Any assignee shall fulfill all the terms and conditions of this Agreement.
   ~~D. Survival of Agreement: The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all representations of Seller regarding the Property; and (4) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the closing.~~ *(initialed) MF*
   E. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia.
   F. **Time of Essence:** Time is of the essence of this Agreement.
   G. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate.
   H. **Binding Agreement Date:** The Binding Agreement Date in this Agreement shall be the date when the party making the last offer, or the Broker (except in a designated agency transaction) the Broker's employees or affiliated licensee of Broker representing that party as a client, receives notice that the offer has been accepted. This party (or the Broker or affiliated licensee representing this party as a client) shall fill in the Binding Agreement Date below and promptly give notice of this date to the other party. Filling in the Binding Agreement Date shall not be deemed to be a counteroffer.
   I. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.
   J. **Parties:** There shall be no Binding Agreement if all Buyers and Sellers listed herein have not signed this Agreement.
   K. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH __Michael Felton__ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.        CF2, Commercial Purchase and Sale Agreement, Page 5 of 7, 01/01/13

L.  **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

M.  **Time Limit of Offer:** The referenced Time Limit of the Offer shall be the date and time on which the Offer expires if both of the following have not occurred: (1) the Offer has not been accepted by the party to whom the Offer was made; and (2) notice of acceptance of the Offer has not been delivered to the party who made the Offer.

19. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph, said exhibit or addendum shall control:

    ☐ Exhibit "A" Legal Description
    ☐ Exhibit "B" Due Diligence Materials
    ☐ Exhibit "C" Addition to Seller's Closing Documents
    ☐ Exhibit "D" Seller's Warranties and Representations
    ☐ Exhibit "E" Permitted Title Exceptions  _Trustee_
    ☒ Other  Special Stipulations provided by ~~TOKN, PC~~ _(Trustee's Special Stipulations)_ . AFN
    ☐ Other _____
    ☐ Other _____
    ☐ Other _____

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

Additional Special Stipulations are ☒ or are not ☐ attached.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _Michael Felton_ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.    CF2, Commercial Purchase and Sale Agreement, Page 6 of 7, 01/01/13

**Buyer Acceptance and Contact Information**

1. _[signature]_
Buyer's Signature

Chee Man Wong, E-Wong Ventures, LLC
Print or Type Name

241 Chattahoochee Street, Cornelia, GA 30531
Buyer's Address

efullglory@gmail.com
Buyer's E-mail Address

(408) 828-0215
Buyer's Phone #        Fax #

2. _____
Buyer's Signature

_____
Print or Type Name

_____
Buyer's Address

_____
Buyer's E-mail Address

_____
Buyer's Phone #        Fax #

**Selling Broker/Affiliated Licensee Contact Information:**

SUN REALTY GROUP LLC
Selling Broker

By: _[signature]_
Broker or Broker's Affiliated Licensee

Michael Felton
Print or Type Name

SNRG01            H-62388
MLS Office Code   Brokerage Firm License Number

Phone# 404-790-5300

Fax# 888-786-9602

E-Mail mike@sunrealtygroupllc.com

332087
Selling Agent's Georgia Real Estate License Number

Member of: Atlanta Commercial Board _____ of REALTORS®

**Seller Acceptance and Contact Information**

1. _[signature] A.M. Nasuti_
Seller's Signature

Albert F. Nasuti, Chapter 7 Trustee
Print or Type Name

40 Technology Parkway South, Suite 300, Norcross, GA 30092
Seller's Address

ifisher@tokn.com
Seller's E-mail Address

(770) 925-0111         (770) 925-8597
Seller's Phone #       Fax #

2. _____
Seller's Signature

_____
Print or Type Name

_____
Seller's Address

_____
Seller's E-mail Address

_____
Seller's Phone #        Fax #

**Listing Broker/Affiliated Licensee Contact Information:**

SUN REALTY GROUP LLC
Listing Broker

By: _[signature]_
Broker or Broker's Affiliated Licensee

Michael Felton
Print or Type Name

SNRG01            H-62388
MLS Office Code   Brokerage Firm License Number

Phone# 404-790-5300

Fax# 888-786-9602

E-Mail mike@sunrealtygroupllc.com

332087
Listing Agent's Georgia Real Estate License Number

Member of: Atlanta Commercial Board _____ of REALTORS®

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of _____
and has been filled in by _____.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH **Michael Felton** IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.        CF2, Commercial Purchase and Sale Agreement, Page 7 of 7, 01/01/13

# TRUSTEE'S SPECIAL STIPULATIONS

These special stipulations, if conflicting with any part of the contract shall control.

PROPERTY ADDRESS: <u>Chase Rd Tracts 1C1, 1C2, 1C3 & 1C4 in Cornelia, GA</u>

ORIGINAL OFFER DATE: <u>March 27, 2013</u>

1. Sales price shall be $ <u>4,000.00</u>

2. Closing cost paid by seller will be $ <u>0.00</u>

3. This property is being sold "as is". If the purchaser chooses to do an inspection of the property, water, gas, or electric utilities may be turned on and off by purchaser. The Court and Trustee have no funds available for utilities. Seller will not pro-rate any expenses associated with utilities.

4. This contract is subject to Bankruptcy Court approval. The closing will take place within 15 days of the Bankruptcy Court Approval at the offices of Thompson, O'Brien, Kemp, & Nasuti, P.C., 40 Technology Parkway South, Suite 300, Norcross, GA 30092 or at any other office as agreed upon by the parties.

5. The Seller shall only execute at closing a Trustee's Deed, with no warranties of title, merchantability or fitness for a particular purpose, subject to (a) zoning ordinances affecting the Property, (b) general utility, sewer and drainage easements of record, (c) leases, easements and restrictions of record, and (d) the lien of ad valorem taxes levied against the Property which are not now due and payable at closing or settlement statement; Seller shall not execute any seller's or owner's affidavits, or any other affidavits or certifications which make any representations with respect to the title to or condition of the Property, or the possession thereof, or any other instruments with respect to such matters.

6. Seller has no knowledge of the property directly and therefore no Property Disclosure shall be required. Trustee/Seller shall provide no Termite Letter and will do no additional repairs to the property.

7. Seller is unaware of any personal property on premises. Seller has no claim to the personal property, if any is on premises. Buyer may execute control and/or ownership to the personal property as she/he deems appropriate.

8. At the time of contract acceptance, purchaser/holding agent/holder shall deposit earnest money with Albert F. Nasuti, Chapter 7 Trustee.

9. No condition or stipulation shall survive the Closing and execution of a Trustee's Deed.

10. The Broker will be paid compensation in the amount as agreed to in the Listing Agreement between the Broker and the Seller ONLY in the event the closing occurs.

11. In case of default by the Seller, the only remedy for the Buyer will be return of the earnest money.

Purchaser: _____ Date: 3-27-13

Seller: _____ Date: 3/29/13

Agent (if represented): _____ Date: 3-27-2013



IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| IN RE: | CHAPTER 7 |
|---|---|
| HABERSHAM DEVELOPMENTS, LLC, | CASE NO. 09-20039-REB |
| Debtor | HONORABLE ROBERT E. BRIZENDINE |

## NOTICE OF ASSIGNMENT OF HEARING

    **PLEASE TAKE NOTICE** that the Trustee has filed a Chapter 7 Trustee's Second Motion for Authority to Sell Real Property of the Estate Free and Clear of Liens, Claims, Encumbrances, and Other Interests and To Disburse Funds at Closing (the "Motion") with the Court in the above-styled case.

    **PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in **Courtroom 103, U.S. Courthouse, 121 Spring Street, Gainesville, Georgia at 1:30 p.m. on April 24, 2013.**

    Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two (2) business days before the hearing. The address of the Clerk's Office is Clerk, **U.S. Bankruptcy Court, Suite 120, 121 Spring Street, Gainesville, Georgia 30501**. You must also mail a copy of your response to the undersigned at the address stated below.

    Dated this 1st day of April, 2013.

 

    /s/ *Albert Nasuti*
    Albert F. Nasuti, Esq.
    Georgia State Bar No. 535209
    Thompson, O'Brien, Kemp & Nasuti, P.C.
    40 Technology Parkway South, Suite 300
    Norcross, Georgia 30092
    Tel: (770) 925-0111
    Counsel for Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>HABERSHAM DEVELOPMENTS, LLC,<br><br>Debtor | CHAPTER 7<br><br>CASE NO. 09-20039-REB<br><br>HONORABLE ROBERT E. BRIZENDINE |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the Chapter 7 Trustee's Second Motion for Authority to Sell Real Property of the Estate Free and Clear of Liens, Claims, Encumbrances, and Other Interests, and to Disburse Funds at Closing and Notice of Assignment of Hearing upon the creditors and parties in interest listed on the attached Exhibit "1" by depositing a copy of the same in the United States Mail, properly addressed and with sufficient postage thereon.

Dated this 1st day of April, 2013.

/s/   *Albert Nasuti*
_____
Albert F. Nasuti, Esq.
Thompson, O'Brien, Kemp & Nasuti, P.C.
Georgia Bar No. 535209
40 Technology Parkway South, Suite 300
Norcross, Georgia 30092
Tel: (770) 925-0111
Counsel for Chapter 7 Trustee

```
EXHIBIT 1                              Carr & Gibbs, Attorneys at Law, P.C.   Embassy National Bank
Case 09-20039-reb                      562 Washington Street                  c/o Jody Charles Campbell
Northern District of Georgia           PO Box 999                             Webb,Tanner,Powell, Mertz & Wilson, LLP
Gainesville                            Clarkesville, GA 30523-0017            P.O. Box 1390
                                                                              Lawrenceville, GA 30046-1390


Habersham Developments, LLC            Hometown Community Bank                Office of the United States Trustee
584 Skyland Drive                      P. O. Box 218                          Room 362
Cornelia, GA 30531-4383                Braselton, GA 30517-0004               75 Spring Street, SW
                                                                              Atlanta, GA 30303-3330


Stonebridge Accounting Strategies, Inc.  Sun Realty Group, LLC                Suntrust Bank
P.O. Box 1290                          Michael Felton                         Wendy L. Hagenau, Esq.
Grayson, GA 30017-0025                 6340 Sugarloaf Parkway, Suite 200      One Atlantic Center
                                       Duluth, GA 30097-4329                  14th Floor
                                                                              1201 West Peachtree Street
                                                                              Atlanta, GA 30309-3488


Embassy National Bank                  Hometown Community Bank                Hometown Community Bank
1812 N. Brown Road                     Attn:  David Dyer                      Attn: Ralph L. Taylor, III
STE 20                                 6700 Hwy 53                            219 Boulevard, NE
Lawrenceville, GA 30043-1801           P.O. Box 218                           Gainesville, GA 30501-3603
                                       Braselton, GA 30517-0004


Jimmy Sellers                          Joseph Clark                           Lovell & Duvall Miller & Associates Inc
7652 Dicks Hill Pkwy                   P.O. Box                               1405 Bill Ramsey Rd
Cornelia GA 30563-2704                 Cornelia, GA  30531                    Clarkesville, GA  30523


Ms. Marta Martin                       Ms. Paige Pace                         SunTrust
379 Rocky Ridge Trail                  3751 Jim Moore Road                    Attn:  Pamela Blosser
Clarkesville GA 30531-4590             Dacula GA 30019-1025                   121 E. Butler Pkwy
                                                                              Gainesville, GA  30501


SunTrust Bank                          SunTrust Bank for First Nat Bank Gwinnett   SunTrust Bank for First Nat Bank Gwinnett
c/o Pamela Blosser, Vice President     J ALan McNabb                         c/o Gwendolyn J. Godfrey, Esq
Mail Code GA-ATL-0922                  25 Park Place, 8th Floor              Bryan Cave Powell Goldstein
25 Park Place - 7th Floor              Mail Code:  GA-ATL-0925               1201 West Peachtree Street, 14th Floor
Atlanta, GA 30303-2918                 Atlanta  GA 30303-2918                Atlanta, GA 30309-3471


United Community Bank                  United Community Bank                  United Community Bank
1472 Highway 411 Byp                   1472 Hwy 411 By-Pass                   c/o B. Walker Entwistle, Esq.
Cornelia, GA  30531                    Cornelia  GA 30531                     303 Peachtree Street, NE
                                                                              2800 Suntrust Plaza
                                                                              Atlanta, Georgia 30308


Walter Matlock                         c/o Wendy L. Hagenau, Esq.             United Community Bank
333 Old Clarksville Mill Road          Gwendolyn J. Godfrey, Esq.             c/o Ron C. Bingham
Clarksville, GA 30523-4664             Bryan Cave Powell Goldstein            Stites & Harbison, PLLC
                                       1201 West Peachtree Street             303 Peachtree Street, NE
                                       14th Floor                             2800 SunTrust Plaza
                                       Atlanta, GA 30309-3471                 Atlanta, GA 30308


John J. McManus                        Martha A. Miller                       Neil C. Gordon
John J. McManus & Associates, P.C.     Schulten, Ward & Turner                Arnall Golden Gregory LLP
Suite 510                              Suite 2700                             171 17th Street, N.W.
4500 Hugh Howell Road                  260 Peachtree Street, NW               Suite 2100
Tucker, GA 30084-4746                  Atlanta, GA 30303-1240                 Atlanta, GA 30363-1031
```